IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NORTH CAROLINA

CHARLOTTE DIVISION

FILED
CHARLOTTE, NC

MAY 2 6 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

ELA ZIV and YEHONATAN KAPACH,

Plaintiffs,

v.

3:26-cv-406-MEO

RENÉE KESTABLER (pseudonym), JOHN/JANE DOE 1 (anonymous),

JOHN/JANE DOE 2 (anonymous, @HSJournalism),

CHANGE.ORG, INC., and A MEDIUM CORPORATION,

Defendants.

**COMPLAINT AND REQUEST FOR DECLARATORY RELIEF, INJUNCTION, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY, JOHN DOE SUBPOENAS, AND ANCILLARY RELIEF FOR FALSE AND DEFAMATORY PUBLICATIONS AND INTENTIONAL PROFESSIONAL INTERFERENCE**

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE.**

**INTRODUCTION**

1. Plaintiffs Ela Ziv and Yehonatan Kapach bring this civil action against Defendant Renée Kestabler, whose true identity is unknown and who is believed to be a pseudonym; against John/Jane Doe 2, operating under the name @HSJournalism; and against additional anonymous actors whose identities shall be determined in discovery. This action arises from the publication of false and defamatory content on two platforms: an article published on Medium on April 10, 2024, and a petition published on Change.org on April 12, 2024, titled "Demanding the University of North Carolina at Charlotte Dismiss Ela Ziv."

2. Both publications falsely attribute to Plaintiffs anti-women activity, disinformation campaigns, online assaults, and destructive conduct damaging their personal integrity, professional standing, and ability to continue in academic, professional, and public roles. Plaintiff Ziv contacted Change.org immediately upon discovering the petition in late December 2025, acting without delay from the moment the publication came to her attention.

3. The immediate and primary purpose of this action is to bring about the removal, suspension, or restriction of access to the defamatory publications, to prevent their continued dissemination, to preserve evidence, and to identify the anonymous publishers in order to hold them accountable. Plaintiffs first seek to halt the ongoing harm caused by these publications, and thereafter to ascertain the publishers' identities and the scope of dissemination.

4. Change.org and A Medium Corporation are included at this stage primarily for evidence preservation, identification of anonymous publishers, and narrow relief not barred by law. As to A Medium Corporation, Plaintiffs do not seek to impose monetary liability for third-party content to the extent immunity under 47 U.S.C. § 230 applies.

5. As to Change.org, Plaintiffs do not ask the Court to impose liability merely because Change.org hosted third-party content. Plaintiffs allege in the alternative that, to the extent the Court determines that Change.org materially contributed to the unlawfulness of the edited post-notice publication, Change.org may not entitled to immunity for the harm caused by the content it chose to retain after notice and after its own partial edit.

## CLASSIFICATION OF PROCEEDINGS AND DEFENDANTS

6. This proceeding is primarily a civil action and request for judicial relief to halt ongoing harm: declaratory relief, injunction, removal or suspension of publications, evidence preservation, and expedited discovery to identify anonymous publishers.

7. Against the direct publishers—Renée Kestabler/John or Jane Doe 1 and @HSJournalism/John or Jane Doe 2—Plaintiffs assert defamation/libel, intentional interference with professional/public relations, and conspiracy or coordinated action as an alternative claim.

8. Against Change.org and A Medium Corporation, Plaintiffs seek evidence preservation, identity disclosure, narrow removal or suspension relief to the extent permitted by law, and any ancillary relief not imposing monetary liability upon them as passive publishers of third-party content. Plaintiffs separately plead a limited alternative claim against Change.org only for post-notice conduct if the Court determines that Change.org materially contributed to the unlawful nature of the edited publication it chose to leave online.

## PARTIES

9. Plaintiff Ela Ziv is a doctoral candidate and research assistant at the University of North Carolina at Charlotte (UNCC), Charlotte, North Carolina. She first discovered the petition and the Medium article in late December 2025, and contacted Change.org immediately following discovery.

10. Plaintiff Yehonatan Kapach, referred to in the publications as "Jonathan Kapach" or "Yehonatan Kapach," is an individual described therein in a false and defamatory manner.

11. Plaintiffs are citizens or subjects of a foreign state and are not United States citizens or lawful permanent residents.

12. Defendant Renée Kestabler is identified as the creator and submitter of the Change.org petition. Plaintiffs believe "Renée Kestabler" is a pseudonym; the true identity shall be determined in discovery from Change.org and other sources.

13. John/Jane Doe 2 is the anonymous author of the article "Unveiling Yehonatan Kapach" published on Medium on April 10, 2024, under the name @HSJournalism. Their true identity shall be determined in discovery from A Medium Corporation.

14. Change.org, Inc. is a Delaware corporation operating the Change.org platform. Change.org received Plaintiff Ziv's initial report on December 29, 2025, after Plaintiff Ziv discovered the publication and immediately contacted the platform. Change.org later received a formal pre-suit demand on May 18, 2026.

15. A Medium Corporation is the corporation operating the Medium platform. It is included at this stage for evidence preservation, disclosure of the identity of @HSJournalism, and any narrow relief not barred by law.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, and to the best of Plaintiffs' knowledge after reasonable inquiry, the anonymous Defendants are not citizens of North Carolina. Plaintiffs reserve the right to amend jurisdictional allegations after disclosure of the anonymous Defendants' identities.

17. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the injury occurred in Charlotte, North Carolina, including harm to Plaintiff Ziv's standing at UNCC and her academic activities conducted in Charlotte, North Carolina.

## TIMELINESS, DELAYED DISCOVERY, REPUBLICATION AND REDISTRIBUTION

18. The petition was first published on April 12, 2024; the Medium article was first published on April 10, 2024.

19. Plaintiff Ziv had no knowledge of the petition or the article until late December 2025. She discovered the Medium article through the link appearing in the Change.org petition, around the time she

discovered the petition itself. Prior to discovering the petition, Plaintiff Ziv had no actual knowledge of the Medium article. Immediately following discovery, in December, 2025, she contacted Change.org and reported the false and harmful content.

20. Plaintiffs do not rely solely on delayed discovery. Plaintiffs allege, in the alternative, that within the relevant limitations period the challenged publications were republished, redistributed, edited, re-presented, or newly communicated to third parties connected to Plaintiff Ziv and her professional and public standing. Plaintiffs further seek discovery regarding indexing, promotion, sponsorship, republication, post-notice edits, and communications that may bear on timeliness.

21. In May 2026, during a work meeting of a professional organization of which Plaintiff Ziv is a member, one participant who did not know Plaintiff searched for information about her on Google, was exposed to the petition, and shared it with other members while believing Plaintiff had already left the meeting. Thus Plaintiff Ziv was directly confronted with the fact that the publication continues to circulate and affect professional and public actors connected to her.

22. In a conversation following the meeting, Plaintiff Ziv was told that the publication could harm the organization as a whole and that at the next monthly meeting a discussion would be held regarding the continuation of Plaintiff Ziv's role in light of the publication. This constitutes concrete evidence that the publications are not merely old or theoretical; they continue to be transmitted, to appear, to affect, and to cause actual harm to Plaintiff Ziv.

23. The gravity of this event is sharpened by the fact that another organization member was compelled to leave a leadership position due to negative publications. The exposure of the false and defamatory publication and its discussion constitute preparation for a demand for similar action against Plaintiff Ziv, creating actual and immediate harm to Plaintiff Ziv, to her academic positions, and to her scholarly work.

24. Plaintiffs allege the action is timely at least as to every republication, redistribution, re-presentation, edit, or new communication of the publications to third parties within the limitations period, including the post-notice edited version of the Change.org petition and the May 2026 communication described above. Plaintiffs will seek leave to amend after obtaining additional information in discovery.

## STATEMENT OF FACTS

### A. The Medium Article — April 10, 2024

25. On April 10, 2024, an article was published on Medium titled: "Unveiling Yehonatan Kapach: The Ex-Israeli Masterminding Mass Disinformation and Online Assaults on Survivors."

26. The article was published by an anonymous actor operating under the name @HSJournalism and the byline "Investigative Journalism." The article accumulated approximately 14,000 "Claps" before its suspension, a figure supporting a finding as to the scope of public exposure. Medium suspended the article on May 19, 2026; it is no longer accessible. Precise data will be established in discovery from A Medium Corporation.

27. The article's URL is: https://medium.com/@HSJournalism/unveiling-yehonatan-kapach-the-ex-israeli-masterminding-mass-disinformation-and-online-assaults-on-50f1fd3e37f3

28. The article contains false and defamatory statements, including attribution of "masterminding" mass disinformation campaigns, attribution of "online assaults" against "survivors," and presentation of Plaintiff Kapach in a false, severe, and harmful factual context. The full content, including the author's identity and publication data, shall be established in discovery.

**B. The Change.org Petition — April 12, 2024**

29. On April 12, 2024, two days after publication of the Medium article, a petition was published on Change.org titled: "Demanding the University of North Carolina at Charlotte Dismiss Ela Ziv."

30. The petition's title illustrates that the purpose was not general public discourse or protected opinion, but a direct call to apply public pressure on UNCC to bring about Plaintiff Ziv's firing or removal from her position or academic standing.

31. The accusations against Plaintiff Kapach are not detached from the petition's purpose with respect to Plaintiff Ziv. The petition presents the alleged connection between Plaintiff Ziv and Plaintiff Kapach as an "additional layer" justifying action against her, using the defamatory statements against Kapach as a means of harming Plaintiff Ziv. The petition's purpose was not only to defame Kapach, but also to create guilt by association.

32. In December 2025, immediately upon discovering the petition, Plaintiff Ziv contacted Change.org and reported the false content. Change.org requested corroborating material. Plaintiff responded that she would provide sources proving the allegations are false, and explained that relevant materials about Fathers for Justice are in Hebrew because the organization is an Israeli nonprofit operating in Israel. Change.org did not follow up on the offer to receive Hebrew-language materials and did not remove the false content.

33. As of May 18, 2026, the petition was still publicly available and had approximately 196 signatures.

34. The petition contains, among other things, the following false statements:

35. Statement A: "Ziv is a known member of Fathers for Justice, an organization that fights against women's rights." Fathers for Justice (Avot L'maan Tzedek) is a registered nonprofit operating in Israel that presents itself as focused on family, parenthood, equality, equal rights, policy advocacy, legal petitions, and support for men and families. Describing the organization as fighting against women's rights is a false and defamatory characterization.

36. Statement B: "Kapach is globally recognized as a conspiracy theorist and digital abuser." Plaintiffs allege this statement is false, defamatory, and presented as a factual assertion rather than mere opinion.

37. Statement C: "He has been identified as a mastermind behind numerous disinformation campaigns online." Plaintiffs allege this statement is false, defamatory, and presented as a factual assertion of organized wrongful conduct.

38. Statement D: "His actions have caused harm and distress to countless individuals who have been targeted by his unscrupulous tactics." Plaintiffs allege this statement is false and defamatory because it asserts harmful conduct toward countless individuals without any disclosed factual basis.

39. Statement E: A link to the Medium article as a "full exposé," thereby adopting and further disseminating the article's false and defamatory content as part of the petition.

40. All of the foregoing statements are false and do not constitute protected opinion. Regarding Statement A, the defamatory falsehood is not the mere mention of Fathers for Justice, but the false characterization of an organization that promotes family, parenting, and equality as one that "fights against women's rights." Regarding Plaintiff Kapach, the petition falsely portrays him as a "digital abuser," a "mastermind" of disinformation campaigns, and a person who harmed countless individuals, even though the petition provides no factual basis for those accusations, nor does the linked "full exposé" article.

## C. Indicia of Coordination Between the Publications

41. Plaintiffs allege that the factual sequence supports the reasonable inference of coordination or joint action: the article was published April 10, 2024; the petition was published April 12, 2024; both publications focus on the same Plaintiffs; both employ similar language and claims; the petition links to the article; and both were executed under pseudonyms or anonymously.

42. At this stage, Plaintiffs do not know whether Renée Kestabler and @HSJournalism are the same person, different persons acting in coordination, or additional actors operating behind the scenes. These facts will be determined in discovery.

## D. Use of Pseudonym and Anonymity as Part of Circumstantial Evidence

43. Both publications were executed under fictitious or anonymous identities. Plaintiffs do not claim that anonymity alone proves actual malice. However, the use of fictitious identities, together with severe factual statements without a visible source, a direct link between the article and the petition, temporal proximity, attribution of serious conduct without factual basis, and targeting of the publication to harm Plaintiff Ziv's academic standing, supports the reasonable inference of knowledge of falsity or reckless disregard for the truth.

44. Change.org's refusal to voluntarily disclose the publisher's details, despite receiving formal notice, reinforces the need for an expedited discovery order immediately upon initiation of proceedings.

### E. Harm to Plaintiffs

45. As a direct and foreseeable result of the article and petition, Plaintiff Ziv has suffered reputational harm, emotional distress, damage to the trust of professional and public actors, and a real risk of harm to her studies, her position, and her professional and public roles.

46. In May 2026, during a work meeting of a professional organization of which Plaintiff Ziv is a member, one participant who did not know Plaintiff searched for information about her on Google, was exposed to the petition, and shared it with other members while believing Plaintiff had already left the meeting. Thus Plaintiff Ziv was directly confronted with the ongoing circulation and impact of the publication on professional and public actors connected to her. This illustrates actual, concrete, and current harm to her reputation, leadership standing, and professional relationships.

47. The gravity of the event is sharpened by the fact that another organization member was compelled to leave a leadership position due to negative publications. The exposure of the false and defamatory publication and its discussion constitute preparation for a demand for similar action. This constitutes actual and immediate harm to Plaintiff Ziv, her academic positions, and her scholarly work.

48. As a direct and foreseeable result of the article and petition, Plaintiff Kapach has suffered serious harm to his personal and professional reputation, emotional distress, and harm to his professional and community relationships.

49. Plaintiffs allege that the defamatory publications were not merely isolated insults, but were designed to damage Plaintiffs' ability to continue their academic, professional, public, and community lives in the United States. The petition expressly demanded institutional action against Plaintiff Ziv at UNCC, while the article and petition falsely portrayed Plaintiff Kapach as a "digital abuser," "conspiracy theorist," and "mastermind" of disinformation campaigns. The foreseeable and intended effect was to poison Plaintiffs' reputations in the very communities and institutions upon which their continued professional and personal stability depends.

50. Plaintiffs are both over the age of fifty. The reputational harm caused by the publications is therefore especially severe because Plaintiffs do not have decades to rebuild academic, professional, and community standing if those relationships are destroyed by false accusations. The damage includes not only current reputational injury, but loss of future professional opportunities, public trust, community standing, and stability.

51. The statements in the publications constitute defamation per se because they attribute to Plaintiffs immoral and improper conduct and harm Plaintiffs' ability to pursue their professional and public roles.

CAUSES OF ACTION

FIRST CAUSE OF ACTION

Defamation / Libel — Change.org Petition

Against Renée Kestabler and John/Jane Doe 1

52. Plaintiffs incorporate and re-allege all prior allegations as if fully set forth herein.

53. Defendant Kestabler and/or John/Jane Doe 1 published the statements in the petition to the general public.

54. The statements are facially factual assertions and not protected opinion, and are therefore subject to empirical verification and refutation. This includes the characterization of Fathers for Justice as an organization that "fights against women's rights," the attribution to Plaintiff Kapach of planning or executing disinformation campaigns, and the claim that his actions caused harm to "countless individuals."

55. The statements constitute defamation per se or, in the alternative, defamation causing special and actual damages.

56. Defendants published the statements knowing they were false, or with reckless disregard for the truth. The use of the pseudonym "Renée Kestabler," together with severe factual statements, the absence of a visible source, the link to the Medium article, and the temporal proximity, support the reasonable inference of knowledge of falsity.

57. As a result, Plaintiffs have suffered damages in an amount to be determined at trial and exceeding $75,000.

SECOND CAUSE OF ACTION

Defamation / Libel — Medium Article

Against John/Jane Doe 2 / @HSJournalism

58. Plaintiffs incorporate and re-allege all prior allegations as if fully set forth herein.

59. John/Jane Doe 2 published the article on Medium under the name @HSJournalism, falsely attributing to Plaintiff Kapach and, by context, Plaintiff Ziv, involvement in mass disinformation campaigns, online assaults, and improper conduct.

60. The statements are false and constitute defamation per se. The publication was made with actual malice or reckless disregard for the truth.

61. Medium suspended the article on May 19, 2026, after determining it violated its platform rules. Plaintiffs allege this suspension is relevant corroborating evidence of the improper nature of the content, without contending that Medium's platform decision is a judicial determination of falsity.

62. Plaintiffs allege all elements of a defamation claim: false statement of fact, publication to third parties, identification of Plaintiffs, fault, and actual harm.

63. As a result, Plaintiffs have suffered damages in an amount to be determined at trial and exceeding $75,000.

## THIRD CAUSE OF ACTION

### Intentional Interference with Professional and Public Relations

### Against the Direct Publishers and Doe Defendants

64. Plaintiffs incorporate and re-allege all prior allegations as if fully set forth herein.

65. Plaintiff Ziv has defined professional and public relationships, including an official role as a board member of a professional organization and academic relationships across the U.S. academic community.

66. Defendants published content intended to harm Plaintiff Ziv's standing and her ability to continue in professional and public roles, and in particular to cause her removal from the university.

67. After the publication was raised in a meeting, Plaintiff Ziv was told she would likely be unable to continue in her role as before.

68. Defendants' conduct has in fact caused harm to Plaintiffs' professional relationships and actual injury.

## FOURTH CAUSE OF ACTION

### Civil Conspiracy / Coordinated Action — Alternative Claim

### Against the Direct Publishers and Doe Defendants

69. Plaintiffs incorporate and re-allege all prior allegations as if fully set forth herein.

70. The chronological sequence, similarity in content, identity of the defamed parties, the link between the petition and the article, and the use of anonymity support the reasonable inference of coordination.

71. To the extent discovery reveals that Defendants acted in concert, they will be held jointly and severally liable.

72. Plaintiffs assert this cause of action in the alternative.

## FIFTH CAUSE OF ACTION

## Evidence Preservation, Identity Disclosure, and Narrow Relief

## Against Change.org and A Medium Corporation

73. Plaintiffs incorporate and re-allege all prior allegations as if fully set forth herein.

74. Change.org and A Medium Corporation hold, or may hold, material information for identifying the anonymous publishers, including email addresses, IP addresses, access logs, account data, publication and editing dates, sharing data, platform payment details, and information about links between the publications.

75. Plaintiffs request that the Court order preservation of this evidence and its disclosure pursuant to valid court orders.

76. As to A Medium Corporation, Plaintiffs do not seek monetary damages, and are limited to the narrow relief of evidence preservation and disclosure of the identity of @HSJournalism, to the extent immunity under 47 U.S.C. § 230 applies.

77. As to Change.org, Plaintiffs seek, in the alternative and only to the extent permitted by law, monetary damages as set forth in the Sixth Cause of Action for post-notice conduct if the Court determines that Change.org materially contributed to the unlawful nature of the edited publication it chose to leave online.

78. The relief sought in this cause of action is, first and foremost, removal, suspension, or restriction of access to the defamatory publications in order to halt ongoing harm. Plaintiffs also request that the Court order reasonable steps to facilitate removal of the publications from search engine results following receipt of a court order.

79. On May 19, 2026, at 4:44 PM, A Medium Corporation responded in writing through its Trust & Safety team, stating it had reviewed the article and determined it violates Medium's rules ("We have determined the story violates our rules"), and that it had suspended the publication ("We have now suspended the post"). This action is relevant evidence that the article was not acceptable under Medium's platform rules.

80. On May 19, 2026, at 6:34 PM, Change.org acknowledged in writing: "Our team has determined that content in the petition you identified violates our Community Guidelines in relation to privacy, and we have removed / anonymized the personal information we identified." This written statement confirms that Change.org itself found a policy violation relating to the petition.

81. Despite that finding, Change.org performed only a partial edit: it removed Plaintiff Ziv's name and photographs, but left the remainder of the publication publicly accessible, including defamatory statements against Plaintiff Kapach in his full name, the demand to harm Plaintiff Ziv's academic standing, contextual identifiers of Plaintiff Ziv, and the link to the Medium article suspended for rule violations.

82. Change.org also changed the URL of the petition from /dismiss-ela-ziv to /dismiss-redacted. Plaintiffs allege this post-notice change is relevant to whether the edited version constitutes a new, deliberate, post-notice publication. Plaintiffs further allege that discovery is necessary to determine what editorial, technical, or content-management actions Change.org took and whether those actions materially contributed to the harm.

83. In subsequent correspondence, Change.org stated that it was not in a position to determine whether the content was defamatory and required further substantiation or legal process before taking additional action, including documentation such as a court order, court document, police report, restraining order, or a detailed explanatory letter. This response confirms that Plaintiffs cannot obtain full relief from Change.org without judicial intervention.

84. The name of the petition's creator, "Renée Kestabler," was not found in available public records. Change.org enabled anonymous publication, harming Plaintiffs who are identified by their full names, and thereafter directed Plaintiffs to contact a petition creator whom they have no reasonable means of identifying. Identification of the petition's creator depends on disclosure of information held by Change.org.

85. As of May 21, 2026, at 5:59 PM, the petition remained publicly accessible. The link "Read the full expose about Jonathan Kapach and [Redacted]" still appeared in the body of the petition. After Medium suspended the linked article for rule violations, clicking that link led to a Medium 410 page stating that the post was under investigation or was found in violation of Medium's Rules. A screenshot including the Change.org URL and timestamp was preserved by Plaintiffs and will be submitted as an exhibit. Plaintiffs have also preserved the Medium 410 page reached through that link. Thus, even after Change.org's edit, the petition continued to disseminate clear hints as to Plaintiff Ziv's identity, to demand harm to her academic standing, and to defame Plaintiff Kapach in his full name.

## SIXTH CAUSE OF ACTION

### Alternative Direct Liability of Change.org for Post-Notice Material Contribution to the Edited Publication

86. Plaintiffs incorporate and re-allege all prior allegations as if fully set forth herein.

87. Plaintiffs plead this claim in the alternative. Plaintiffs do not seek to impose liability merely because Change.org hosted third-party content. Rather, Plaintiffs allege that after receiving direct notice, Change.org reviewed the petition, determined that content in the petition violated its Community Guidelines, selectively removed or anonymized some information, changed the petition URL, and chose to leave the edited post-notice version publicly available.

88. Plaintiffs allege that, if discovery shows that Change.org's post-notice review, selective editing, redaction, URL change, and decision to retain defamatory substance and contextual identifiers materially contributed to what made the edited post-notice petition unlawful, Change.org may be treated as responsible for that edited publication to the extent permitted by law.

89. Plaintiffs recognize that 47 U.S.C. § 230 protects interactive computer services from liability based solely on third-party content. However, Plaintiffs allege that Section 230 does not bar liability where a platform itself materially contributes to the unlawful nature of the content at issue. Plaintiffs therefore plead, in the alternative, that Change.org's own post-notice editorial conduct may remove or limit Section 230 immunity as to the edited version it chose to publish or continue publishing.

90. Change.org's written statement — "our team has determined that content in the petition you identified violates our Community Guidelines... we have removed / anonymized the personal information we identified" — evidences that Change.org read and reviewed the petition, identified a policy violation, and took selective action with respect to the content. Plaintiffs allege that this was not merely passive hosting, but an affirmative post-notice content-management act.

91. Plaintiffs further allege that Change.org removed Plaintiff Ziv's name and photographs while retaining the defamatory statements regarding Plaintiff Kapach, contextual identifiers sufficient to identify Plaintiff Ziv, the demand for Plaintiff Ziv's removal from her academic position, and the link to the Medium article that had itself been suspended for rule violations. Plaintiffs allege that this selective retention of harmful content contributed to the continuing injury caused by the edited post-notice petition.

92. This allegation is made in the alternative and is subject to proof after discovery. To the extent the Court determines that Change.org materially contributed to the unlawful nature of the edited post-notice publication, Plaintiffs allege that Change.org is not entitled to Section 230 immunity for harm caused by the content it chose to retain and continue displaying after notice.

93. To the extent the Court determines that Section 230 bars monetary liability against Change.org, Plaintiffs request, at minimum, mandatory injunctive relief requiring removal or disabling of the edited petition, together with evidence preservation and identity disclosure sufficient to identify the direct publishers and obtain an effective removal order against them.

## SEVENTH CAUSE OF ACTION

### Expedited Discovery and John Doe Subpoena

### Against Change.org and A Medium Corporation

94. Plaintiffs incorporate and re-allege all prior allegations as if fully set forth herein.

95. All true Defendants have concealed their identities. Without identifying disclosure from the platforms, service of process cannot be effectuated, proceedings cannot be conducted, and the right to relief cannot be realized.

96. For purposes of obtaining an expedited discovery order in defamation cases, federal courts commonly consider factors such as: (a) the existence of a prima facie defamation claim; (b) the absence of a reasonable alternative means of identifying the Defendants; and (c) whether the need for disclosure outweighs the interest in anonymity. Those factors are satisfied here.

97. Section 230 does not, standing alone, bar a judicial order for disclosure of identifying information when the platform is not being sued for damages as a publisher of third-party content.

98. Plaintiffs request that the Court order immediately, without awaiting a Rule 26(f) Conference, expedited discovery compelling Change.org and A Medium Corporation to preserve and produce: IP addresses; email addresses; account data; login history; editing history; publication and sharing data; internal communications relating to content review or content moderation; verification details; and any other identifying information before this information is deleted or becomes unavailable.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

a. A declaration that the statements in the petition and the article are false and defamatory;

b. Compensatory damages, presumed damages for defamation per se, punitive damages where permitted by law, injunctive relief, evidence preservation, expedited discovery, costs, interest, and all other relief the Court deems just and proper, in an amount to be determined at trial but believed to exceed $900,000;

c. Presumed damages to the extent permitted by law for defamation per se;

d. Punitive damages against those found liable, to the extent actual malice is proven;

e. An order compelling the publishers, upon identification, to immediately remove the petition, the article, and any republication thereof within their control;

f. An evidence preservation and disclosure order against Change.org and A Medium Corporation;

g. An order directing Change.org and A Medium Corporation to remove, suspend, or temporarily freeze the defamatory publications to the extent such relief is permitted by law;

h. An expedited discovery order (John Doe Subpoena) compelling Change.org and A Medium Corporation to immediately preserve and produce all identifying information of the anonymous publishers;

i. Interest, costs, and such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED.

Respectfully submitted,

_____

Ela Ziv, Pro Se Plaintiff

13929 Daltrey Ln

Charlotte, NC 28277

(980) 422-1399 | ela.ziv@gmail.com


_____

Yehonatan Kapach, Pro Se Plaintiff

13929 Daltrey Ln

Charlotte, NC 28277

(980) 422-2322 | info@edna.news


Dated: ___5/26___, 2026